IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH MILLER,                           : | |
|     Plaintiff,                             : | |
|                                                    : | CIVIL ACTION |
|                 v.                          : | |
|                                            : | NO. 09-2445 |
| MICHAEL J. ASTRUE,                 : | |
|     Defendant.                           : | |

September _14, 2011                                                                             Anita B. Brody, J.

**MEMORANDUM**

**I. INTRODUCTION**

Plaintiff Joseph Miller brings this action pursuant to 42 U.S.C. 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. The case was referred to a Magistrate Judge for a Report and Recommendation ("R & R"). That has been completed. The Magistrate Judge recommends that I deny Miller's request for review of the Commissioner's final decision to deny benefits. Miller submits two objections to the R & R and requests a de novo determination. For the reasons set forth below, I will remand this case to the Commissioner for further proceedings consistent with this opinion.

**II. BACKGROUND**

On January 6, 2005, Miller filed an application for SSI alleging that he became disabled on November 30, 2004. Miller was forty-three years old at the time of the alleged onset of his disability. R. 54. In his application, Miller alleged that his disability resulted from psoriatic

arthropathy; left ankle fusion; back, neck, and joint pain; hepatitis; and a history of drug and alcohol abuse. R. 21, 53-66, 73-74, 88-99.  At the time of his alleged disability, Miller had a General Education diploma ("GED"), and a past relevant work history as a roofer, truck driver, and an assembly line worker. R. 28, 77-78, 80, 135.

On May 24, 2005, Miller's application was denied at the initial level. R. 34.  Miller then requested a hearing before an Administrative Law Judge ("ALJ").  On November 15, 2007, an ALJ held a hearing on Miller's claim for SSI. R. 480-95.  On January 8, 2008, the ALJ found that Miller had the residual functional capacity to perform light work with no detailed instructions. R. 24.  The ALJ further concluded that Miller was capable of performing his past relevant work as an assembly line worker. R. 28.  As a result of these findings, the ALJ denied Miller's application for SSI.

Following the ALJ's ruling, Miller requested review by the Appeals Council. R. 6-10.  The Appeals Council denied Miller's request for review on March 25, 2009, rendering the ALJ's decision the final decision of the Commissioner. R. 3-6.  On May 29, 2009, Miller initiated this action for judicial review of the ALJ's decision.

### III. STANDARD OF REVIEW

A district court "must uphold a final agency determination unless [it] find[s] that it is not supported by substantial evidence in the record." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  "Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999) (internal quotation marks omitted).  A reviewing court must not "weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford*, 399

F.3d at 552 (internal quotation marks omitted).

A district court conducts a de novo review of objections to the magistrate's R & R. Fed. R. Civ. P. 72(b)(3).

## IV. DISCUSSION

### A. Determination of Disability

"In order to establish a disability under the Social Security Act, a claimant must demonstrate there is some medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Plummer*, 186 F.3d at 427 (internal quotation marks omitted). A claimant is considered unable to engage in any substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A). To make this disability determination, the Commissioner uses a five-step sequential evaluation process. *See* C.F.R. § 404.1520. In *Plummer*, the Court of Appeals for the Third Circuit explained this five step analysis as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a

listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994).

If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

186 F.3d at 428.

In this case, the ALJ addressed the first four steps and found: (1) Miller has not engaged in substantial gainful activity since January 6, 2005; (2) Miller has the following severe impairments: psoriatic arthritis; hepatitis; degenerative joint disease; personality disorder; and cirrhosis; (3) Miller's impairments do not meet or equal the criteria for a listed impairment; and (4) Miller has the residual functional capacity ("RFC") to enable him to perform his past relevant work as an assembly line worker. R. 23-28. Following step four, the ALJ concluded that Miller is not disabled.

In her R & R, Magistrate Judge Sitarski finds that there is substantial evidence to support the ALJ's determination that Miller is not disabled because he has the capacity to perform light work, including his past relevant work as an assembly worker. Miller objects to the R & R's conclusion that substantial evidence supports the ALJ's determination that Miller has the RFC to perform light work.

**B. Step Four - RFC Determination that Miller is Capable of Light Work**

4

"'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999) (citing 20 C.F.R. § 404.1545(a)).  Residual functional capacity may be classified as "sedentary," "light," "medium," "heavy," or "very heavy."  20 C.F.R. § 404.1567. The Social Security Administration defines work as "light" when it:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 CFR § 404.1567(b).  "The Secretary has further explained this definition in Social Security Ruling 83-10 by stating that light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day," *Jesurum v. Sec'y of U.S. Dept. of Health & Human Servs.,* 48 F.3d 114, 119 (3d Cir.1995), and the ability to stoop occasionally during the day.  *See* Social Security Ruling 83-10.  Additionally, the Social Security Administration has explained that many of these jobs "require use of arms and hands to grasp and to hold and turn objects." *Id.*

"In making a residual functional capacity determination, the ALJ must consider all evidence before him." *Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). "Moreover, the ALJ's finding of residual functional capacity must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). "[A]n ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of*

*Social Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706 -07 (citation omitted). "Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided." *Fargnoli*, 247 F.3d at 42.

The Court of Appeals for the Third Circuit "has long been concerned with ALJ opinions that fail properly to consider, discuss and weigh relevant medical evidence." *Fargnoli*, 247 F.3d at 42. Miller argues that the ALJ's RFC determination that he is capable of light work is not based on substantial evidence because it fails to properly "consider, discuss and weigh relevant medical evidence." *Id.* Specifically, Miller argues that this case must be remanded to the Commissioner because (1) the ALJ omitted, without discussion or rationale, evidence of objective medical findings that are probative of the extent of Miller's ability to work; and (2) the ALJ did not explain his decision to reject the opinions of two treating physicians in their RFC Questionnaires, which if accepted, point to a finding that Miller does not have the RFC to perform light work.

In his opinion, the ALJ spends several paragraphs summarizing the different sources of medical evidence that he reviewed. The ALJ then provides a single paragraph of findings of facts responsible for his determination that, regardless of Miller's physical impairments, Miller is capable of light work.

The first problem identified by Miller is the ALJ's failure to include, even in his summary

6

of all of the evidence reviewed, numerous examples of objective medical evidence that is relevant to whether Miller had the RFC to perform light work.  Specifically, Miller notes that the ALJ failed to mention the following objective medical evidence:

      (1) That Community Volunteers in Medicine indicated in their 2004 treatment note that Miller had decreased sensation in his left foot (some sensation in his toes, but none in his ankle), a very reduced range of motion in his neck, neck pain, weakness and pain flexing/extending wrists, pain bilaterally in extending his elbows, and pain extending from the left knee and radiating to the left hip. R. 257-59;

      (2) That Dr. Callahan indicated in his 2005 consultative exam report that Miller's straight leg raising was 60 degrees on the left and 90 degrees on the right, with "some pain" in his lower back for straight leg raising. R. 269;

      (3) A MRI performed February 23, 2007 that indicated a reversal of the normal cervical lordosis, disc dessication at multiple levels, and "[m]ultilevel spondylitic changes including diffuse disc-osteophyte complexes from the C3-C4 to C6-C7 levels . . . .  Severe right-sided neural forminal narrowing at C3-C4 and C4-C5.  Narrowing of the left lateral recess at C5-C6." R. 407;

      (4) Dr. Islam's examination notes from 2007 that indicate Miller had tenderness in his right hand and ankle, numbness and tingling from his neck through his left arm and into the middle three digits of his hand, and cervical range of motion limited to 5 to 10 degrees from side to side. R. 393-96;

      (5) Dr. Cabrera's 2007 note, which indicates that Cabrera observed that Miller had restricted motion in both of his wrists and significant restrictive motion in his cervical area.

Additionally, Cabrera noted that he had discussed the option of surgery to remove disc herniation and compression at the C5/C6 level of Miller's spine.  R. 400-01;

(6) That Dr. Swamy indicated in a 2007 note that Miller had a positive Patrick's test, limited neck movement, an absent reflex on the left side, numbness in the L5 distribution in the right foot, joint contractures and limited movement in his right wrist, and was unable to make a full fist on the right side.  R. 398-99; and

(7) That 2007 treatment notes from the Center for Physical Rehabilitation and Sports medicine indicate that Miller had decreased function bilaterally in his hands, and limited sensibility in his left hand and entire left arm.  R. 469-74.

Miller contends that it was error for the ALJ to omit this medical evidence because it is relevant to whether he has the capacity to perform light work.  Specifically, Miller asserts that the multiple findings regarding his arms, wrists, and hands are pertinent to whether Miller can grasp, hold, and turn objects, tasks required by many light work jobs.  *See* Social Security Ruling 83-10.  Also, Miller asserts that the multiple findings regarding his feet, legs, knees, hips, and spine are pertinent to whether Miller can stand, walk, sit, and stoop sufficiently to perform light work.

In addition to his objection that the ALJ completely ignored probative medical evidence, Miller objects to the ALJ's treatment of the RFC opinions of two of his treating physicians.  In her Physical Residual Functional Capacity Questionnaire, Dr. Swamy checked a box indicating that Miller can sit less than two hours total in an eight hour day, even with normal breaks.  R. 101.  Dr. Swamy also indicated on the questionnaire that Miller cannot stoop at all during an eight hour day. R. 102.  Dr. Hoch indicated in her Arthritis Residual Functional Capacity Questionnaire that Miller can sit or stand/walk for about four hours total in an eight hour day,

even with normal breaks. R. 105. While this information was mentioned by the ALJ in his review of the evidence, it was completely ignored by the ALJ in his findings of fact. Miller contends that this evidence is inconsistent with a finding of light work duty because light work "generally requires the ability to stand and carry weight for approximately six hours of an eight hour day," *Jesurum,* 48 F.3d at 119, and the ability to occasionally stoop. *See* Social Security Ruling 83-10.

In his findings of fact, the ALJ addressed the treating physicians' RFC questionnaire responses in the following manner:

> The undersigned gives less weight to the findings of Dr. Swamy in her November 2007 questionnaire, in that she is not an arthritis specialist. She notes that the claimant may need a cane at times yet she has never prescribed one to him. On November 30, 2007, Dr. Susan Hoch, an arthritis specialist, found the claimant was capable of low stress jobs. He could occasionally lift up to 20 pounds. He had limitations in repetitive reaching, handling or fingering with his left hand due to numbness. He may be absent from work for more than 4 times per month. Humidity and cold would worsen the pain. No physicians have found that the claimant is incapable of all work activity. The undersigned notes that in the pre-printed assessment completed by Doctors Swamy and Hoch, as to the number of days the claimant could miss work, for or more days per month were selected without explanation.

R. 27. The ALJ never addressed the treating physicians' assessment of how many hours Miller could sit or stand/walk in an eight hour day, or whether he could stoop. Although the ALJ gave less weight to Dr. Swamy's findings in her November 2007 questionnaire because she was not an arthritis expert, there is no indication whatsoever that the ALJ wholly rejected any of the findings the doctors made in their questionnaires, except the finding that Miller could miss four or more days of work per month. Thus it appears that the ALJ either ignored the treating physicians' findings as to the amount of time Miller could sit and stand/walk in a day, and his ability to

stoop, or the ALJ implicitly rejected them.  None of the ALJ's findings of fact contradict the physicians' findings.  The ALJ's findings that Miller "is not immobile and has a regular gait . . ., [and] can take public transportation," R. 27, do not conflict with the treating physicians' findings regarding the amount of time in a day Miller can sit or stand/walk, or his ability to stoop.  Nor does the ALJ's finding that "[n]o physicians have found that the claimant is incapable of all work activity," R. 27, conflict with the possibility, raised by the treating physicians' findings, that Miller cannot perform light work.

According to the Court of Appeals for the Third Circuit, "an ALJ may not reject pertinent or probative evidence without explanation." *Johnson*, 529 F.3d at 204.  An "ALJ's failure to explain his implicit rejection of [] evidence or even to acknowledge its presence [is] error." *Cotter*, 642 F.2d at 707.  Here, the ALJ implicitly rejected evidence provided in Drs. Swamy's and Hoch's RFCs that addressed Miller's ability to sit, stand/walk, and stoop, and was inconsistent with the ALJ's finding that Miller can perform light work.  Additionally, the ALJ failed to acknowledge the existence of other probative medical evidence.  The ALJ's failure to discuss and/or explain his reasons for rejecting relevant medical evidence makes it impossible to determine whether the ALJ reached the right result in this case.[1]  *See Cotter*, 642 F.2d at 706-07 ("[A]n explanation from the ALJ of the reason why probative evidence has been rejected is

---

[1] There may be evidence in the record that contradicts the treating physicians' findings. For example, the record contains a Residual Functional Capacity Questionnaire completed by a Social Security staff member, who did not treat Miller, that indicates that Miller can sit and stand/walk for a total of about six hours in an eight hour day.  *See* R. 287-93.  The existence of this conflicting evidence makes it even more important that the ALJ discuss all of the relevant evidence and explain his reasons for discounting some it.  *See Fargnoli*, 247 F.3d at 42 ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate and remand a case where such an explanation is not provided.")

required so that a reviewing court can determine whether the reasons for rejection were improper.") Because it is impossible to know whether the ALJ properly determined that Miller can perform light work, given the ALJ's treatment of the probative objective medical evidence, I will remand this case to the Commissioner so that the ALJ can properly consider step four.[2] On remand, the ALJ must make specific findings as to all of the probative medical evidence and explain the reasons for rejecting any of this evidence.

                                              s/Anita B. Brody

                                        _____

                                        Anita B. Brody,        J.

Copies via ECF on          Copies via U.S. Mail on

---

    [2] The Magistrate Judge recommends that I deny Miller's request for review of the Commissioner's final decision to deny benefits. This recommendation is not based on the ALJ's opinion; rather, it is based on evidence that the Magistrate Judge culled from the records Miller submitted to the ALJ, which the ALJ neglected to mention in his opinion. The Magistrate Judge relies on this additional information to fashion an explanation as to why the ALJ concluded that Miller is capable of performing light work, even though this explanation is lacking in the ALJ's opinion. The Magistrate Judge must have recognized the deficiencies in the ALJ's opinion and attempted to correct them by providing her own explanation for the ALJ's opinion based on the additional evidence that she independently gathered from the record. Despite this valiant effort, it was error for the Magistrate Judge to have done so. *See Fargnoli*, 247 F.3d at 44 n.7 (explaining that a district court can't attempt to rectify "the ALJ's failure to consider all of the relevant and probative evidence, . . . by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ").